IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
May 26 2023
U.S. DISTRICT COURT
Northern District of WV

**BRANDON CALL,**

    **Plaintiff,**

v.                                                         CIVIL ACTION NO.: 2:23-cv-9 (Kleeh)

**SNOWSHOE MOUNTAIN INC.,**
**ROBBY BERRY**

    **Defendants.**

## COMPLAINT

**COMES NOW** the Plaintiff, Brandon Call hereinafter referred to as ("Mr. Call"), by and through his counsel, J. Morgan Leach, Esq. and the J Law Firm, and for his Complaint, states as follows:

## PARTIES

1. Plaintiff Brandon Call is a resident of Gallipolis, Ohio.

2. Defendant Snowshoe Mountain Inc., is a West Virginia corporation with its principal place of business in Pocahontas County, located in Snowshoe, WV.

3. Defendant Robby Berry is a resident of Pocahontas County and supervisor employed by Snowshoe Mountain Inc.

4. All of the acts and/or failures to act alleged herein were duly performed by the Defendants, and/or are attributable to the Defendant, Snowshoe Mountain Inc., acting by and through its agent, Robby Berry. Said acts and/or failures to act were within the scope of any agency or employment, or were ratified by the Defendants, Snowshoe Mountain Inc.

## JURISDICTION AND VENUE

5. Plaintiff restates each and every allegation contained in Paragraphs 1 through 4 of

this Complaint as if the same were repeated, verbatim, herein.

6. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C §§1332 and 1367.

7. Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391(b).

8. This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. §1988

**FACTS**

9. Plaintiff restates each and every allegation contained in Paragraphs 1 through 8 of this Complaint as if the same were repeated, verbatim, herein.

10. On or about Saturday, September 3, 2022 (hereinafter "day of attack"), Brandon Call and his family were patrons at the Snowshoe Ski Resort. Located at 10 Snowshoe Dr., Snowshoe, WV.

11. Upon information and belief, the Snowshoe Ski Resort is owned and operated by the Defendant Snowshoe Mountain, Inc., (hereinafter "Snowshoe").

12. Defendant Robby Berry, (hereinafter "Supervisor Berry") is a supervisor for Snowshoe Mountain Resort, working in his official capacity as an employee and agent for Defendant Snowshoe Mountain Inc.

13. At approximately 6:00 p.m. on the day of the attack, Mr. Call and his family approached the Ballhooter ski lift.

14. Upon being assured by the lift operator that the lift was still open, the group attempted to board the ski lift to take another ski run.

15. Upon their attempt, they were abruptly stopped by another Snowshoe employee, a resort supervisor.

16. Upon information and belief, the resort supervisor was Defendant Robby Berry

2

acting in his official capacity as an employee and agent of Snowshoe and at all times alleged heroine, was acting within its general authority for his job description and for the benefit of his employer.

17. Upon information and belief, Supervisor Robby is an hourly paid employee of Snowshoe, working on the clock at the time of the incident, acting at the service of his master.

18. Upon information and belief, Supervisor Berry is tasked with enforcing the rules and policies of his employer, Snowshoe.

19. Upon information and belief, it is understood and expected by Snowshoe that such enforcement may oftentimes upset patrons of Snowshoe Ski Resort.

20. Supervisors in such a position owe a duty to all patrons to act reasonably in their enforcement of the rules and regulations of the Snowshoe Ski Resort, regardless of how the patrons respond.

21. Upon information and belief, Snowshoe is aware that Supervisor Berry may have disputes with patrons regarding the resort's policies and procedures when acting within the scope of his employment.

22. Upon being stopped, Mr. Call quipped a friendly joke in the direction of Supervisor Berry, asking him what would happen if he just hopped onto the lift.

23. Supervisor Berry immediately lost his patience with Mr. Call and quickly escalated the situation.

24. Supervisor Berry indicated he could "leave [Brandon's] ass" hanging in midair, demonstrating that his employer – Snowshoe – allows him to respond to patrons with disdain and disrespect within the scope of his employment. .

25. It is foreseeable that Supervisor Berry's lack of restraint with patrons could result in a physical altercation.

26. Upon information and belief, this is not the first time that Supervisor Berry has been engaged in altercations with patrons while acting within the scope of his employment with Snowshoe.

27. Supervisor Berry's behavior described herein went well beyond unreasonable and can only be described as extreme or outrageous conduct.

28. In an attempt to de-escalate the matter, Mr. Call and his family began to walk away.

29. As Mr. Call and his family walked away, with their backs to him, Supervisor Berry exclaimed "I'm right behind you mother fu****" in the direction of Mr. Call as he pursued angrily towards him.

30. Upon information and belief, the exclamation placed Mr. Call in reasonable apprehension of imminent, harmful or offensive contact.

31. Following his exclamation, Supervisor Berry threw a punch, hitting Mr. Call in the back.

32. The force of the punch knocked Mr. Call down a flight of stairs.

33. Upon information and belief, Supervisor Berry intentionally caused a harmful or offensive bodily contact with Mr. Call without his consent.

34. Supervisor Berry breached his duty of reasonable care in the enforcement of the rules and policies of Snowshoe Ski Resort by physically attacking Mr. Call.

35. Supervisor Berry acted with gross, wanton, or reckless negligence as to the likelihood that his actions would not only physically harm Mr. Call, but also cause him to

suffer severe emotional distress.

36. A physical alteration is an ordinary and natural incident that may result from the enforcement of Snowshoe's policies and procedures.

37. Upon information and belief, although Snowshoe was aware such an incident may occur, such severe injuries were not intended nor expected to be incurred by any patron with an altercation.

38. Upon information and belief, Mr. Call fell approximately 5 feet down a flight of stairs due to Supervisor Berry's conduct.

39. Having just knocked Mr. Call down a flight of stairs, Supervisor Berry continued to pursue him in an attempt to continue his attack.

40. Injured from his fall, Mr. Call had no choice but to cover up and try to protect himself from the attack.

41. Upon information and belief, the matter was only resolved when Mr. Call's father was able to pull Supervisor Berry off Mr. Call, who was laying there helplessly with a broken arm.

42. Upon information and belief, it was the actions of his father that likely saved Mr. Call from being significantly injured further.

43. The attack caused Mr. Call to suffer injury and deformity to his left elbow, severe enough to require evaluation at the Emergency Department.

44. Mr. Call's elbow injuries left him unable to work for approximately one month.

45. Mr. Call has been forced to consult with a number of doctors and undergo physical therapy in an attempt to treat his injuries.

46. Upon information and belief, Mr. Call has suffered permanent damage to his

elbow as a result of the attack, which cannot be surgically repaired.

47. Upon information and belief, Mr. Call is once again able to work as a laborer in a limited capacity and suffers constant pain and discomfort in his work life.

48. Upon information and belief, Mr. Call will not be able to finish his career as a laborer due to his progressing pain and will someday have to find a new occupation.

49. Upon information and belief, Supervisor Berry was known to have a temper and to be quick to escalation and/or physical altercation prior to his employment at Snowshoe Ski Resort.

50. Upon information and belief, Supervisor Berry's reputation for violence and any possible incidents similar to the attack alleged herein was readily available to Snowshoe, had they conducted a reasonable investigation prior to his hiring.

51. Upon information and belief, this is not the first incident between Supervisor Berry and a co-worker or third-party patron.

52. Upon information and belief, Supervisor Berry is known among his co-workers to have a temper and to be quick to escalation and/or physical altercation.

53. Following the attack, Mr. Call now suffers severe emotional distress and is fearful to return to Snowshoe Ski Resort.

54. Following the attack, Mr. Call now suffers severe emotional distress while attending public functions, including all ski resorts.

55. Mr. Call should not be forced to endure such distress over simple activities such as going into public and attending a ski resort.

56. The actions described herein were motivated by hatred, personal spite, a desire to injure Mr. Call and/or a conscious disregard for Mr. Call's health, safety and welfare.

## COUNT I – RESPONDEAT SUPERIOR

57. Plaintiff restates each and every allegation contained in Paragraphs 1 through 56 of this Complaint as if the same were repeated, verbatim, herein.

58. Because of the special relationship that exists, *respondeat superior* imputes vicarious liability to an employer based on an employee's fault.

59. An employer is liable for the conduct of its employees, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within its general authority for his job description and for the benefit of the employer.

60. Conduct found to be for the benefit of its master is held to be within the scope of employment.

61. A servant may be within his scope of employment if his actions occur within the authorized time and space of the employment.

62. At all time herein, Supervisor Berry was working within the Snowshoe Ski Resort, on the clock as an employee of Snowshoe.

63. Modern tendency is to hold an employer liable wherever the assault resulted from a discharge of the duties of the service, no matter how remote or indirectly connected therewith.

64. In preventing Mr. Call and his family from getting onto the ski lift, Supervisor Berry was acting within the scope of his employment and to the benefit of his employer.

65. Snowshoe is aware that, in carrying out their duties of enforcement, supervisors may become confrontational with patrons, which could lead to escalations and physical altercations.

66. As a "supervisor" for Snowshoe, Supervisor Berry is authorized to enforce the

rules and policies of his employer which may antagonize patrons of Snowshoe Ski Resort and may lead to physical altercations.

67. Supervisor Berry owes all patrons of Snowshoe a duty of reasonable care in the enforcement of the rules and policies of Snowshoe Ski Resort.

68. Supervisor Berry's actions in enforcing the rules and policies of Snowshoe by denying Mr. Call and his family from entering the ski lift initiated an argument and altercation between the parties, an ordinary and natural result of Supervisor Berry's employment duties, and ultimately led to Supervisor Berry breaching his duty, assaulting Mr. Call, and causing his injuries.

69. All actions alleged herein by Supervisor Berry were within his scope of employment.

## COUNT II – NEGLIGENT HIRING AND RETENTION

70. Plaintiff restates each and every allegation contained in Paragraphs 1 through 69 of this Complaint as if the same were repeated, verbatim, herein.

71. An employer is liable for negligent hiring when they fail to conduct a reasonable investigation into a potential employee's background in order to become aware of any foreseeable risks of the possibility of harm or injury to the other employees or to third parties.

72. An employer should reasonably foresee the risk of injury caused by hiring or retaining an unfit person.

73. Supervisor Berry was known to have a temper and to be quick to escalation and/or physical altercation prior to his employment at Snowshoe Ski Resort.

74. Supervisor Berry's reputation for violence and any possible incidents similar to

the attack alleged herein was readily available to Snowshoe, had they conducted a reasonable investigation prior to his hiring.

75. Supervisor Berry has a history of incidence between himself and a co-worker or third-party patron while employed by Snowshoe Ski Resort.

76. Supervisor Berry is known among his co-workers to have a temper and to be quick to escalation and/or physical altercation.

77. The risk of altercation by Mr. Berry with co-workers and/or third-party patrons is a foreseeable risk with the possibility of harm or injury to those individuals.

78. An individual who is quick to altercation and/or violence is an unfit person for Mr. Berry's employment position.

**COUNT III – ASSAULT**

79. Plaintiff restates each and every allegation contained in Paragraphs 1 through 78 of this Complaint as if the same were repeated, verbatim, herein.

80. An individual is liable for assault when he acts with the intent to place another in reasonable apprehension of an imminent, harmful or offensive contact.

81. In escalating the situation by exclaiming "I'm right behind you mother fu****" while angrily charging at him, Supervisor Berry placed Mr. Call in apprehension of imminent, harmful or offensive contact.

82. The severity of Mr. Call's injuries were neither expected nor intended by any Defendants.

83. Supervisor Berry's actions which placed Mr. Call in apprehension of an imminent harmful or offensive contact were done willfully, intentionally, and unlawfully.

84. Supervisor Berry's actions were motivated by hatred, personal spite, a desire to

injure Mr. Call and/or a conscious disregard for Mr. Call's health, safety and welfare.

85. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

### COUNT IV – BATTERY

86. Plaintiff restates each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if the same were repeated, verbatim, herein.

87. A person is liable for battery when he intentionally causes a harmful or offensive bodily contact with another person without their consent.

88. In striking Mr. Call in the back, subsequently knocking him off the ski lift and down a flight of steps, Supervisor Berry intentionally caused a harmful or offensive contact.

89. By pursuing Mr. Call further after knocking him down the steps, jumping onto him to continue the attack, the Supervisor Berry intentionally caused a harmful or offensive contact.

90. Mr. Call did not consent to any contact as evidenced by him turning to walk away to de-escalate the situation and his attempt to remove himself from Supervisor Berry.

91. By and through the actions of its employee acting within his scope of employment, Snowshoe is vicariously liable for the battery.

92. The severity of Mr. Call's injuries were neither expected nor intended by any of the Defendants.

93. Supervisor Berry's battery as described herein was willful, intentional, and

unlawful.

94. Supervisor Berry's actions were motivated by hatred, personal spite, a desire to injure Mr. Call and/or a conscious disregard for Mr. Call's health, safety and welfare.

95. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

### COUNT V – NEGLIGENCE

96. Plaintiff restates each and every allegation contained in Paragraphs 1 through 95 of this Complaint as if the same were repeated, verbatim, herein.

97. In every action for damages resulting from injuries to the Plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish three elements: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries received thereby, resulting proximately from the breach of that duty.

98. Snowshoe, by and through their agents and employees, owe a duty of reasonable care to all patrons in the enforcement of their rules and policies.

99. Supervisors employed by Snowshoe owe a duty of reasonable care to the patrons in their enforcement of the rules and policies governing the Snowshoe Ski Resort.

100. Supervisor Berry breached the duty he owed Mr. Call by escalating the situation and attacking him.

101. Mr. Call was injured because of the actions of Supervisor Berry as a result of the breach.

102. By and through the actions of its employee acting within his scope of employment, Snowshoe is vicariously liable for the negligence of Supervisor Berry.

103. The Supervisor Berry's actions were motivated by hatred, personal spite, a desire to injure the Mr. Call and/or a conscious disregard for Mr. Call's health, safety and welfare.

104. Mr. Call suffered physical, emotional, and compensatory damages as a result of the conduct alleged herein and throughout.

105. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

**COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

106. Plaintiff restates each and every allegation contained in Paragraphs 1 through 105 of this Complaint as if the same were repeated, verbatim, herein.

107. At all times relevant to the allegations contained within this complaint, Supervisor Berry had a duty to conduct himself in a reasonable manner to prevent causing emotional distress/damages to Mr. Call through his negligence.

108. As alleged herein, Supervisor Berry breached the duty he owed to Mr. Call.

109. As a result of Supervisor Berry's unprovoked attack, Mr. Call has suffered serious fear of returning to Snowshoe Ski Resort, resulting in severe emotional distress similar to that of a reasonable person given the circumstances.

110. As a result of the attack by Supervisor Berry, Mr. Call has suffered from

paranoia and distrust and is fearful to attend public functions, including ski resorts, resulting in severe emotional distress.

111. The serious emotional distress suffered by Mr. Call was reasonably foreseeable by Supervisor Berry, thus making him liable.

112. Due to Supervisor Berry's negligence, Mr. Call has suffered damages as alleged herein.

113. By and through the actions of its employee acting within his scope of employment, Snowshoe is vicariously liable for the negligent infliction of emotional distress.

114. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

**COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

115. Plaintiff restates each and every allegation contained in Paragraphs 1 through 114 of this Complaint as if the same were repeated, verbatim, herein.

116. A Defendant is liable for Intentional Infliction of Emotional Distress (IIED) when their conduct was extreme and outrageous as to exceed the bounds of decency, with the intent to inflict emotional distress, or acted recklessly with certainty or substantial certainty that emotional distress would result from his conduct, those actions caused the plaintiff to suffer emotional distress, and the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

117. Supervisor Berry's behavior described herein in his treatment and injuring of

Mr. Call simply for his friendly banter went well beyond unreasonable and can only be described as extreme or outrageous conduct.

118.    Supervisor Berry acted intentionally or recklessly with substantial certainty that his actions would not only physically harm Mr. Call, but also cause him to suffer severe emotional distress.

119.    As a result of Supervisor Berry's unprovoked attack, Mr. Call has suffered serious fear of returning to Snowshoe Ski Resort, resulting in severe emotional distress similar to that of a reasonable person given the circumstances.

120.    As a result of the attack by Supervisor Berry, Mr. Call has suffered from paranoia and distrust and is fearful to attend public functions, including ski resorts, resulting in severe emotional distress.

121.    Mr. Call should not be forced to endure such distress over simple activities such as going into public and attending a ski resort.

122.    Due to Supervisor Berry's negligence, Mr. Call has suffered damages as alleged herein.

123.    By and through the actions of its employee acting within his scope of employment, Snowshoe is vicariously liable for the negligent infliction of emotional distress.

124.    "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

## COUNT VIII – PUNITIVE DAMAGES

125. Plaintiff restates each and every allegation contained in Paragraphs 1 through 124 of this Complaint as if the same were repeated, verbatim, herein.

126. From the onset of the events described herein, it was the intent and desire of the Supervisor Berry to injure the Plaintiff, while doing so with a conscious disregard for the Plaintiff's health, safety, and welfare.

127. All actions described herein by Supervisor Berry's was willful, intentional, and unlawful.

128. Supervisor Berry's deliberate, malicious, and intentional acts toward Plaintiff have proximately caused continuing economic and non-economic damages to Plaintiff, all of which warrant and command an award of punitive damages.

129. Because the actions described herein were motivated by hatred, personal spite, a desire to injure the Plaintiff and/or a conscious disregard for Mr. Call's health, safety and welfare, he is entitled to punitive damages pursuant to W.Va. Code. §55-7-29.

130. By and through the actions of its employee acting within his scope of employment, Snowshoe is vicariously liable for the punitive damages.

**WHEREFORE**, the above-described misconduct of the Defendants has directly and proximately caused injury to the Plaintiff and accordingly, the Plaintiff demands the following relief:

      a) Compensatory damages;

      b) General damages, including, but not limited to, loss of use, annoyance, inconvenience, and aggravation;

      c) Punitive damages;

d) Pre-judgment and post-judgment interest;

e) Costs and attorney's fees pursuant to 42 U.S.C. §1988; and

f) Such other relief which the Court may deem proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

**Brandon Call**

**By Counsel**


/s/ J. Morgan Leach
_____
J. Morgan Leach, Esq.(W. Va. Bar #13124)
J Law Firm
P.O. Box 5518 Vienna, WV 26105
(855) 444-5529 (call | text | fax)
morgan@jmorganleach.law
Jmorganleach.law